# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **JADDEN I. BEDELL,** <br> a/k/a "Paco" <br><br> **Defendant.** | CASE NO. 2:22-CR-200 <br><br> JUDGE MICHAEL H. WATSON |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Memorandum for Jadden I. Bedell's upcoming sentencing hearing. The Government agrees with the factual findings and guideline calculations from the Presentence Investigation Report, which yields an advisory sentencing range of 37–46 months. Given significant mitigating circumstances, however, the Government acknowledges that an appropriate sentence likely falls below the advisory guidelines range.

## I. BACKGROUND

On October 18, 2022, the Grand Jury returned a one-count Indictment against Jadden I. Bedell, which charged him with conspiring with five other individuals to deal in firearms without a license. PSR, ECF No. 31, ¶¶ 1-2. On June 28, 2023, Bedell pled guilty to that charge pursuant to a non-binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A). *Id.* at ¶ 4.

Bedell's guilty plea stemmed from a months-long ATF investigation into an illegal firearm-trafficking ring. *Id.* at ¶¶ 15-32. Bedell, along with his close friend and quasi-relative, Charles L. Jackson, and two other individuals from Cleveland worked with two men from central Ohio to unlawfully purchase and resell 114 handguns on the black market. *Id.* at ¶ 15. Throughout the conspiracy, Jackson and another member of the conspiracy were prohibited from receiving and/or possessing any firearms given their criminal records. *Id.* at ¶ 20. Despite these prohibitions, as well as the general prohibition on dealing in firearms without a federal firearms license, Jackson, Bedell, and their confederates bought and resold scores of handguns, exchanging tens of thousands of dollars in the process. *Id.* at ¶¶ 15-32. During that time, Bedell traveled to central Ohio four times to take delivery of the firearms prior to reselling them in Cleveland and New York. *Id.* at ¶¶ 22, 24, 26, 30-31. Fortunately, the ATF dismantled the firearm-trafficking ring in the Spring of 2022 through a series of search warrants, undercover firearm sales, and arrests.

After Bedell was indicted, the parties entered into a non-binding plea agreement. *Id.* at ¶ 4. In that agreement, the parties reached several advisory sentencing stipulations, including a Base Offense Level of 12; a 6-level enhancement given the number of firearms Bedell trafficked; a 4-level enhancement for engaging in the trafficking of firearms; and a 3-level reduction for timely acceptance of responsibility, resulting in a Total Offense Level of 21. *Id.* at ¶ 5. The parties did not, however, reach any agreement as to Bedell's Criminal History Category. *Id.*

On September 11, 2023, the Probation Officer released Bedell's Final PSR. The Probation Officer calculated a Total Offense Level of 21 and a Criminal History Category of I, which yields a sentencing range of 37–46 months of imprisonment. *Id.* at ¶ 105. Neither party has lodged any objections to the PSR.

## II. LEGAL STANDARDS

After *Booker v. United States*, 543 U.S. 220 (2005), district courts must engage in a three-step sentencing procedure. Courts must first determine the applicable guidelines range, then consider whether a departure from that range is appropriate, and finally, consider the applicable guidelines range—along with all the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. The central command in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in § 3553(a).

## III. ANALYSIS

### A. The Applicable Guidelines Range

The Probation Officer calculated a Total Offense Level of 21 and a Criminal History Category of I, resulting in a guidelines range of 37–46 months of imprisonment. PSR, ¶ 105. Neither party has objected to those calculations, so the Court should adopt them at the time of sentencing.

### B. Possible Departures from the Applicable Guidelines Range

The Probation Officer did not identify any factors that would warrant a departure from the applicable guidelines range. *Id.* at ¶ 118. The Government agrees that no departures are warranted.

3

**C. Consideration of the Sentencing Factors from 18 U.S.C. § 3553(a)**

Finally, the Court must consider the applicable guidelines range alongside the sentencing factors from 18 U.S.C. § 3553(a) to fashion a sentence that is sufficient, but not greater than necessary, to meet Congress's sentencing goals.

<u>1. The Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense are both serious and troubling. Bedell conspired with five other individuals to unlawfully traffic hundreds of handguns on the black market. Bedell and his chief conspirator, Charles Jackson, worked closely with others to purchase 114 handguns,[1] which they later resold in Cleveland, Rochester (New York), and elsewhere. To make matters worse, Bedell and his conspirators sold those handguns to individuals whom they knew or had reason to believe could not lawfully possess those guns. Law enforcement officials continue to recover those handguns at the scenes of other crimes, and more recoveries are expected in the weeks, months, and years ahead. Sadly, there is no precise measurement for the acute harm that Bedell and his conspirators will have inflicted on America's communities, which are already awash in guns and gun violence. *See* Associated Press, *U.S. Gun Death Rates Hit Highest Levels in Decades, Study Says*, Politico (Nov. 29, 2022), https://www.politico.com/news/2022/11/29/gun-death-rates-highest-levels-00071285 (citing research on all firearm deaths from 1990 to the present that concluded that in 2021 alone, firearm-deaths claimed over 47,000 lives in America, "the most in at least 40 years").

---

[1] In truth, Bedell and his conspirators attempted to purchase 130 handguns for resale, but the final 16 handguns were recovered as part of an undercover buy/bust. PSR, ¶¶ 30-22.

4

## 2. The History and Characteristics of the Defendant

Bedell's history and characteristics offer signification mitigation, however. Bedell, who is only twenty-two years old, grew up in a broken household in Rochester, New York. His mother, who is a registered nurse, raised him by herself in a troubled neighborhood where violence and drugs were commonplace. Given her long hours at work, Bedell and his sisters were left home alone for long stretches. Bedell was consistently bullied in school due to his small size and learning disabilities. Things grew so bad that he became suicidal at age twelve. As a result, his mother moved the family to Cleveland. Unfortunately, the bullying continued in Cleveland, and Bedell's mom had to curtail her college coursework to be more attentive to her son's struggles. Bedell, who has documented learning disabilities, and who was on an IEP throughout high school, graduated from Shaker Heights High School in 2020.

Since graduating in the throes of the pandemic, Bedell has held a number of jobs in shipping and logistics—including stints at FedEx, Amazon, and Southern Glazer's Wine and Spirits. He currently works as a loader for Southern Glazer's, where he makes $17.50 per hour, and as a part-time Amazon Fulfillment Center employee, where he makes $16.50 per hour. Bedell still lives with his mom at their Stickney Avenue address in Cleveland. He is single and has no children.

According to Bedell's mom, he was brought into this firearm-trafficking scheme by Charles Jackson – one of his co-conspirators and his older sister's half-brother. Bedell's mom believes that Jackson manipulated Bedell, who was younger, into following in his footsteps. She thinks this case has scared Bedell straight.

Bedell was struck by a car while crossing the street when he was twelve. During that accident, he suffered injuries to his right arm and hand, his back, and his face. He spent several days in the hospital, and the broken bones and lost sensation in his hand led to a three-year setback in terms of learning how to write again. Aside from smoking marijuana to ease the anxiety and pain from being run over, Bedell has no history of substance abuse or alcohol abuse.

Prior to joining this conspiracy, Bedell was robbed at gunpoint by someone he considered to be his close friend. That individual was staying with Bedell and his mother at the time. Bedell was at home playing video games when his friend, who was a member of the Heartless Felons Gang, pointed a gun in his face and demanded all his belongings. Bedell and his mom filed a police report, but then they feared retaliation from their assailant and the Heartless Felons, so they moved into a hotel for a month before relocating altogether. Bedell's mom feels this was another example of her son being taken advantage of by someone he considered a friend.

Bedell has no prior criminal history.

### 3. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

The Court must also impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence. 18 U.S.C. § 3553(a)(2)(A)-(B). Illegal firearm trafficking is a serious offense—one that imposes real costs on the communities that find themselves awash in gun violence. Any sentence must reflect that seriousness, and the Government is confident the Court will impose a sentence that will do just that.

Likewise, the goals of retribution and promoting respect for the law are important considerations in any case, including firearm-trafficking cases like this. Those same communities that find themselves awash in gun violence need to hear a loud and consistent message from law enforcement officers, prosecutors, and most importantly, the courts: "we hear you, and we are doing something to help."

The same goes for deterrence—both specific and general. Bedell needs to know that what he did was wrong, and that the stakes will go up with each additional crime he commits. The Government is confident that the Court will impose a sentence that accounts for the need for adequate deterrence.

### 4. The Need to Protect the Public

The Court must also consider the need for the sentence imposed "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(C). Those concerns are heightened here given the nature of the offense and the role that Bedell and others played in arming other individuals who are prohibited from possessing firearms. That said, Bedell's lack of criminal history suggests that this *could* be a one-off offense if Bedell is, in fact, scared straight.

### 5. The Kinds of Sentences Available and the Sentencing Range for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Based on a Total Offense Level of 21 and a Criminal History Category of I, the guideline range falls in Zone D of the sentencing table. As such, the guidelines recommend that the "the maximum term shall be satisfied by a sentence of imprisonment." U.S.S.G § 5C1.1(f). The Government leaves it to the Court to determine whether the § 3553(a) factors outweigh that recommendation.

6. The Need to Avoid Unwarranted Sentencing Disparities

Finally, the Court must craft a sentence that accounts for "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

## IV. CONCLUSION

For these reasons, the United States respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to satisfy the goals of sentencing.

Respectfully Submitted,

KENNETH L. PARKER
United States Attorney

s/Noah R. Litton
NOAH R. LITTON (0090479)
S. COURTER SHIMEALL (0090514)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Phone: (614) 469-5715
Email: Noah.Litton@usdoj.gov

# **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was served electronically on all counsel of record on this 18th day of September, 2023.

<pre>
                                        s/Noah R. Litton
                                        NOAH R. LITTON (0090479)
                                        Assistant United States Attorney
</pre>